# EXHIBIT B

## INDEPENDENT CONTRACTOR AGREEMENT

**THIS INDEPENDENT CONTRACTOR AGREEMENT** (this "Agreement") is entered into this May 1,2013 but effective as of May 2nd ,2013 by and between Carter Brothers Security Services, LLC, a Florida limited liability company with its principal place of business located at 100 Hartsfield Centre Parkway, Suite 100, Atlanta, Georgia 30354 (the "Company") and , Ramses Gutierrez , an individual resident of the State of California , with a mailing address of ▓▓▓▓▓▓▓▓ Salinas, CA 93905 (the "Contractor") (Contractor and Company individually sometimes referred to as a "Party" and together referred to as the "Parties").

### W I T N E S S E T H; that

**WHEREAS**, the Contractor is in the business of, among other things, providing technical related services; and

**WHEREAS**, the Company is interested in having the Contractor provide the Services (as defined in Section 1 hereof) and the Contractor is interested in providing the Services to the Company.

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants and agreements herein set forth, the parties hereto hereby agree as follows:

1. **Description of Services.** The Contractor shall liaise directly with Ray Carpenter, Director, Field Operations for the Company, and shall provide Technical-related services: (i) installation services for Carter Brothers customers; (ii) act as the local technician for assigned Carter Brothers customers in the Vertical Market/ Territory; and (iii) work to ensure compliance with the customers' scheduled completion dates and other contractual milestones, (collectively, the "Services"). The Company is entering into this Agreement in reliance on the Contractor's special abilities with respect to performing the Services, and the Contractor agrees to use his best efforts and abilities to see that the Services are performed in accordance with the highest professional standards. Contractor further agrees and acknowledges the following: (i) Contractor has the right to direct the completion of their individual work flow, necessary work hours to complete tasks and assignments, and location to perform work; and (ii) any training attended by Contractor shall be at their individual discretion.

2. **Term.** This Agreement is effective as of May 2nd, 2013 and shall continue for a period of approximately fifty two (52 weeks) through May 2nd, 2014, unless earlier terminated pursuant to Section 9 hereof (the "Term"). The Term may be further extended by mutual written agreement of the Parties.

3. **Fee.** The Company shall pay the Contractor a fee of $15 per hour ("Fee") on a bi-weekly basis, based on a forty-hour (40) work week, in accordance with this Agreement. To the extent any portion of the Term in which Contractor is engaged is a partial week, the Fee shall remain the same for such partial week. To the extent any portion of the Term in which Contractor is engaged is a work week that exceeds forty hours, the Fee shall remain the same for the additional time in a work week. Any additional hours over the forty-hour work week must be agreed upon by the parties in advance and must be approved by the Director, Security & Life Safety Products in advance. The Contractor is not entitled to any compensation for services performed or expenses incurred in connection with this Agreement other than as set out in this Agreement. **Payment of any income or other taxes which may be due upon the Contractor's Fee from the Company shall be the Contractor's responsibility, and the Company will not withhold any amounts from the Contractor's Fee for this purpose. The Contractor will not be eligible to participate in any of the Company's fringe benefits programs, nor shall the Contractor be entitled to have workers' compensation payments made by the Company by virtue of this consultancy.**

4. **Exclusivity.** During the term of this Agreement, the Contractor will not enter into any activity, employment or business arrangement which conflicts with the Company's interests or the Contractor's obligations under this Agreement. In view of the sensitive nature of the Contractor's status, the Company shall have the option of terminating this Agreement at any time if, in its sole judgment, a conflict of interest appears to exist or appears imminent. The Contractor acknowledges that the Company may enter into similar agreements with parties other than the Contractor for services similar to those which may be provided by the Contractor hereunder.

5. **Non-Solicitation; Non-Competition.** During the Term of this Agreement (and in the case of subsection 5(b) hereof, for a period of twelve (12) months thereafter):

(a) The Contractor will not, directly or indirectly, engage or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, or control of, be employed by, associated with, or in any manner connected with, or render services or advice to, any business whose products or activities compete in whole or in part with the products or activities of the Company or any of the Company's affiliates, anywhere within the Vertical Market/Territory; provided, however, that Contractor may purchase or otherwise acquire up to (but not more than) five percent (5%) of any class of securities of any enterprise (but without otherwise participating in the activities of such enterprise) if such securities are listed on any national or regional securities exchange or have been registered under Section 12(g) of the Securities Exchange Act of 1934. The Contractor agrees that this covenant is reasonable with respect to its duration, geographical area, and scope; and

(b) The Contractor and its respective affiliates or representatives will not, directly or indirectly, either for themselves or any other person, firm or entity, (A) induce or attempt to induce any employee of the Company or its affiliates to leave the employ of the Company or any of its affiliates, (B) in any way interfere with the relationship between the Company or its affiliates and any employee of the Company or its affiliates, (C) employ, or otherwise engage as an employee, independent contractor, or otherwise, any employee of the Company, or any of its affiliates, or (D) induce or attempt to induce any customer, supplier, licensee, or business relation of the Company or its affiliates to cease doing business with the Company, or in any way interfere with the relationship between any customer, supplier, licensee, or business relation of the Company or its affiliates. In the event of a breach by the Contractor of any covenant set forth in this Section 5, the term of such covenant will be extended by the period of the duration of such breach. The Contractor will not, at any time during the Term of this Agreement or for a period of five (5) years thereafter, disparage the Company, its affiliates or any of their respective members, shareholders, directors, officers, employees, or agents.

6. **Confidentiality.** The Contractor shall regard as confidential and proprietary (i) all information communicated to it by the Company in connection with this Agreement (which information shall at all times be the property of the Company), and (ii) all third party confidential information which has been provided in confidence to the Company and which is disclosed to the Contractor on a need-to-know basis solely for the benefit of the Company (such information is hereinafter collectively referred to as ("Information"). The Contractor shall not, without the Company's prior written consent, at any time (a) use the Information for any purpose other than in connection with his performance of the Services for the benefit of the Company or (b) disclose any portion of the Information to third parties. The Contractor shall promptly at the termination of this Agreement return to the Company all the Information which is in written or tangible form (including, without limitation, all copies, summaries and notes of the contents thereof), regardless of the party causing the same to be in such form. For purposes of this Agreement, Information shall not mean Information previously known to recipient, or Information provided by a third party not bound by this Agreement, or Information which otherwise becomes known to recipient through no unlawful act, or Information that the Contractor independently develops outside of the work being performed under this Agreement; nor shall the disclosure of Information be prohibited, to the extent that the Information is required to be disclosed by law or regulatory authority.

7. **Force Majeure.** If either Party is prevented from complying, either totally or in part, with any of the terms or provisions of this Agreement by reason of fire, flood, storm, strike, lockout or other labor trouble, riot, war, rebellion, accident or other acts of God, then upon written notice to the other Party, the requirements of this Agreement, or the affected provisions hereof to the extent affected, shall be suspended during the period of such disability. During such period, the party not prevented from complying as aforesaid may seek to have its needs (which would otherwise be met hereunder) met by or through third parties without liability hereunder. The Party prevented from complying shall make all reasonable efforts to remove such disability within thirty (30) days of giving such notice.

8. **Contractor's Representations and Warranties.** The Contractor represents and warrants to the Company that (i) he has and will have full power and authority to enter into, and fully to perform, this Agreement and that no agreement or understanding with any other person, firm, or corporation exists or will exist which would interfere with the Contractor's obligations hereunder or which would violate any agreement or understanding with any other person, firm or corporation; (ii) the disclosure to the Company of any information by the Contractor in connection with the Services does not contravene any confidentiality obligation the Contractor may have to any third party; and (iii) All payments made under this Agreement constitute compensation for the Services performed.

9. **Termination.** This Agreement shall automatically and immediately terminate in the event of the Contractor's death. Either Party may terminate this Agreement with or without cause upon fourteen (14) days' written notice to the other Party or may immediately terminate this Agreement if an Event of Default (as defined below) by the other Party has occurred by giving written notice thereof to the defaulting Party. Except as otherwise specifically provided herein, the termination of this Agreement shall not relieve the Parties of any obligation accruing with respect to this Agreement prior to such termination. The term "Event of Default" shall mean any of the following events:

(a) failure by a Party to comply with or to perform any provision of this Agreement and continuance of such failure for three (3) days after notice thereof to such Party; or

(b) any warranty or representation made by a Party is this Agreement is breached or is false or misleading in any material respect.

10. **Independent Contractor.** This Agreement shall not give rise to a partnership, agency, employment, or other relationship between the parties, except as otherwise provided herein. All activities by the Contractor under the terms of this Agreement shall be carried on by the Contractor as an independent contractor and not as an agent for or regular W-2 employee of the Company. Moreover, the Contractor may be characterized as a 1099 employee, which excludes Contractor from participating in and receiving Company benefits afforded to Company's regular W-2 employees. Additionally, the Contractor (1099 employee) shall be responsible for the payment of his or hers local, state, federal, and any other taxes related to the Services provided under this Agreement. The Contractor has no power to act for, represent, or bind the Company unilaterally, but may participate and perform their duties in conjunction with an authorized regular W-2 employee or officer of the Company. The Contractor shall not be considered a regular W-2 employee of the Company within the meaning or application of Company or any of its affiliated company's employee fringe benefit programs for any purpose whatsoever, including for the purpose of vacations, holidays, unemployment benefits, employee severance plans, long and short term disability, maternity or paternity leave, group life insurance, accidental death, medical coverage, hospitalization or any other benefits afforded to the Company's regular W-2 employees. The Contractor is responsible for the payment of all federal and state income, social security, and any other taxes levied in connection with the Services rendered hereunder. If the Company is required to make any payment for taxes, or otherwise on behalf of the Contractor, the Contractor will reimburse the Company in full for such payments. The Contractor authorizes the Company to deduct such sums from any commissions or payments due the Contractor hereunder.

11. **Indemnification.** The Contractor shall indemnify the Company from and against any damages, claims, or expenses (including reasonable attorneys' fees) arising out of the Contractor's breach of the Agreement, negligent or willful acts or omissions in connection with performing the Services, or from the Contractor's acts or omissions outside the scope of the Agreement including wrongfully seeking any Company employee benefits including but not limited to unemployment benefits with any state agency. The Company shall indemnify the Contractor from and against any damages, claims or expenses (including reasonable attorneys' fees) arising out of the Company's breach of the Agreement or arising out of claims or actions by third parties against the Contractor by virtue of his performance of this Agreement, except to the extent of the Contractor's negligent or willful act or omission.

12. **Resolution of Disputes**

a. MEDIATION. ANY DISPUTE, CLAIM OR CONTROVESY ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS ALTERNATIVE DISPUTE RESOLUTON PROVISION, SHALL FIRST BE SUBMITTED BY THE PARTIES TO NON-BINDING MEDIATION BEFORE A MEDIATOR IN ATLANTA, GEORGIA, TO BE AGREE UPON BY THE PARTIES. EITHER PARTY MAY COMMENCE MEDIATION BY PROVIDING THE OTHER PARTY A WRITTEN REQUEST FOR MEDIATION, SETTING FORTH THE SUBJECT OF THE DISPUTE AND THE RELIEF REQUESTED. THE PARTIES WILL COOPERATE WITH EACH OTHERS IN SELECTING A MEDIATOR AND IN SCHEDULING MEDIATION. IF THE PARTIES CANNOT REACH AGREEMENT ON A MEDIATOR, THEN A MEDIATOR SHALL BE AN SELECTED PURSUANT TO THE COMMERCIAL MEDIATION PROCEDURES OF THE AMERICAN ABRITRATION ASSOCIATION, OR ITS SUCCESSOR, AND SHALL BE A LICENSED ATTORNEY WITH AT LEAST TEN (10) YEARS EXPERIENCE PRACTICING IN THE SUBJECT AREA IN DISPUTE, OR A RETIRED JUDGE. THE PARTIES AGREE THAT THEY WILL PARTICIPATE IN THE MEDIATION IN GOOD FAITH, AND THAT THEY WILL SHARE EQUALLY IN ITS COSTS. ALL OFFERS, PROMISES, CONDUCT AND STATEMENTS, WHETHER ORAL OR WRITTEN, MADE IN THE COURSE OF THE MEDIATION BY ANY OF THE PARTIES, THEIR AGENTS, EMPLOYEES, EXPERTS AND ATTORNEYS, AND BY THE MEDIATOR AND THE MEDIATOR'S EMPLOYEES ARE CONFIDENTIAL, PRIVILEGED AND INADMISSIBLE FOR ANY PURPOSE, INCLUDING IMPEACHMENT, IN ANY LITIGATION OR OTHER PROCEEDING INVOLVING THE PARTIES, PROVIDED THAT EVIDENCE THAT IS OTHERWISE ADMISSIBLE OR DISCOVERABLE SHALL NOT BE RENDERED IN ADMISSIABLE OR NON-DISCOVERABLE AS A RESULT OF ITS USE IN THE MEDIATION.

b. ARBITRATION  IF THE MATTER IS NOT RESOLVED THROUGH MEDIATION, THEN IT SHALL BE SUBMITTED BY THE PARTIES TO JAMS, OR ITS SUCCESSOR, FOR FINAL AND BINDING ARBITRATION EXCLUSIVELY IN ATLANTA, GEORGIA. THIS ARBITRATION CLAUSES SHALL BE ENFORCEABLE PURSUANT TO THE FEDERAL ARIBITRATION ACT (9 U.S,.C. § 1, ET SEQ.). THE PARTIES AGREE THAT THIS AGREEMENT AFFECTS INTERESTATE COMMERCE. EITHER PARTY MAY INITIATE ARBITRATION WITH RESPECT TO THE MATTERS PREVIOUSLY SUBMITTED TO MEDIATION BY FILING A WRITTEN DEMAND FOR ARBITRATION AT ANY TIME FOLLOWING THE INITIAL MEDIATION SESSION OR SIXTY (60) DAYS AFTER THE DATE OF FILING THE WRITTEN REQUEST FOR MEDIATION, WHICHEVER OCCURS FIRST. IF THE AMOUNT AT ISSUE IS FIFTY THOUSAND DOLLARS ($50,000.00) OR LESS, THEN THE ARBITRATION SHALL BE BEFORE A SOLE ARBITRATOR. IF THE AMOUNT AT ISSUE EXCEEDS FIFTY THOUSAND DOLLARS ($50,000.00), THEN THE ARBITRATION SHALL BE BEFORE A PANEL OF THREE (3) ARIBITRATORS. FOR SELECTION OF A PANEL OF THREE (3) ARBITRATORS, EACH PARTY SHALL BE GIVEN A LIST OF THE SAME SEVEN (7) PROPOSED ARBITRATORS BY JAMS, EACH PARTY SHALL BE ENTITLED TO STRIKE TWO (2) ARBITRATORS FROM THE PANEL, AND THE REMAINING THREE (3) ARBITRATORS SHALL SERVE AS THE ARBITRATON PANEL. THE ARBITRATION SHALL BE ADMINSTERED BY JAMES PURSUANT TO ITS COMPREHENSIVE ARBITRATION RULES AND PROCEDURES. JUDGEMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. EACH PARTY SHALL PAY ONE-HALF (1/2) OF THE COSTS OF THE ARBITRATION INCLUDING THE FEES OF THE ARBITRATORS (3) AGAINST THE PARTY WHO DOES NOT PREVAIL. EXCEPT AS EXPRESSLY PROVIDED TO THE CONTRARY IN THIS AGREEMENT, IN ANY DISPUTE ARISING UNDER THIS AGREEMENT, EACH PARTY SHALL BEAR ITS OWN ATTORNEY'S FEES, EXPENSES AND COURT COSTS, IRRESPECTIVE OF THE OUTCOME OF ANY TRAIL, ARBITRATION, HEARING AND/OR MEDIATION PROCEEDING.

c. ENFORCEMENT. THESE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS SHALL BE ENFORCEABLE BY ANY STATE OR FEDERAL COURT OF COMPENTENT JURISDICTION, AND ANY ACTION BROUGHT TO ENFORCE THESE PROVISIONS SHALL BE BROUGHT IN FULTON COUNTY, GEORGIA. THE PARTY SEEKING ENFORCEMENT SHALL BE ENTITLED TO AN AWARD OF ALL COST, FEES AND EXPENSES, INCLUDING ATTORNEYS' FEES, TO BE PAID BY THE PARTY AGAINST WHOM ENFORCEMENT IS ORDERED. EACH OF THE PARTIES HERETO CONSENTS TO THE IN-PERSONAM JURISDICTION OF ANY STATE OR FEDERAL COURT IN FULTON COUNTY, GEORGIA, AND WAIVES ANY OBJECTION TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING INSUCH COURTS.

13. **Notices.** All notices, requests, demands and other communications given hereunder (collectively, "Notices") shall be in writing and delivered personally or by overnight courier to the parties at the following addresses or sent by facsimile, with confirmation received, to the facsimile number specified below:

(a) If to the Contractor at: 1117 Eagle Drive Salinas, CA 93905

(b) If to the Company at:
100 Hartsfield Centre Parkway, Suite 100
Atlanta, GA 30354
Attn: President
Facsimile: 404-767-2568

All Notices shall be deemed delivered when actually received if delivered personally or by overnight courier, sent by facsimile, addressed in accordance with Sections 13 (a) or (b) hereof, as the case may be. Each of the Parties shall hereafter notify the other in accordance with this Section 12 of any change of address or facsimile number to which notice is required to be mailed.

14. **Assignment.** The Contractor acknowledges that the Services to be provided to the Company are unique and personal. Accordingly, the Contractor may not assign any of his rights or delegate any of its duties or obligations under this Agreement to another party without the written consent of the Company. This Agreement shall inure to the benefit of the Company and the Contractor and the Company's successors, assigns and affiliates.

15. **Compliance with Laws.** The Contractor shall perform all Services in compliance with all applicable federal, state, county, and municipal statutes, regulations, codes, ordinances and orders and with those of any other governing body having jurisdiction.

16. **Integration; Amendment.** This Agreement constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof, and supersedes all prior oral or written discussions, proposals, and agreements between them relating thereto. No waiver, modification or amendment to this Agreement shall be valid unless in writing and signed by the Parties.

17. **No Waiver.** No failure or delay on the part of either Party in the exercise of any right, power or remedy under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or remedy preclude other or further exercise thereof, or the exercise of any other right, power or remedy.

18. **Headings.** Section headings in this Agreement are for convenience only and shall not affect the interpretation of any provision of this Agreement.

19. **Governing Law; Severability; Etc.** This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Georgia applicable to contracts made in that State, without giving effect to the conflicts of laws principles thereof. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition of invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. All obligations of the Contractor and rights of the Company expressed herein shall be in addition to, and not in limitation of, those provided by applicable law. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties have duly executed this Agreement by their respective authorized representatives of the date first above written.

CARTER BROTHERS SECURITY SERVICES, LLC        CONTRACTOR

By: _____                    By: _____
    Ray Carpenter                                  Ramses Gutierrez

Title: <u>Director, Field Operations</u>