UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMSES GUITIERREZ, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARTER BROTHERS SECURITY SERVICES, LLC, AT&T DIGITAL LIFE, INC., PACIFIC BELL TELEPHONE COMPANY DBA AT&T DATACOMM, INC., ATT&T CORP. and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:14-cv-00351-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

On March 10, 2014, Plaintiffs filed the instant class action on behalf of themselves and other putative class members (collectively "Plaintiffs or "Class Members") against Carter Brothers Security Services, LLC ("Carter Brothers"), AT&T Digital Life, Inc. ("AT&T"), Pacific Bell Telephone Company dba AT&T Datacomm, Inc. ("PacBell"), AT&T Corp., and Does 1 through 10 inclusive ("Doe Defendants"). See ECF No. 8. Plaintiffs are seeking damages, restitution, civil penalties, and injunctive relief as a result of Defendants' alleged violations of both state and federal labor laws. Plaintiffs further allege conversion along with violations of California's Unfair Competition Law. Id.

Presently before the court is a Motion brought by Defendant AT&T to dismiss Plaintiffs' First Amended Complaint ("FAC"). For the following reasons, that motion is DENIED.

## BACKGROUND[1]

In 2012, Carter Brothers entered into a contract with AT&T that called for Carter Brothers to provide technicians for the installation of AT&T Digital Life security systems in customer homes and businesses. Carter Decl., ¶ 2. Under the terms of that contract, Carter Brothers pledged to hire, train, and supply labor and construction-related installation and monitoring technicians to AT&T in California and various other states. Prior to commencing work, Carter Brothers and AT&T required Plaintiffs and Class Members to sign an Independent Contractor Agreement ("Agreement"), which Plaintiffs allege misclassified them as independent contractors rather than employees. Plaintiffs claim that Carter Brothers entered into these Agreements with Class Members, even though both Carter Brothers and AT&T knew the contract between them did not include sufficient funds to comply with all applicable local, state, and federal laws or regulations governing the labor or services to be provided.

The main thrust of Plaintiffs' argument is that Plaintiffs were required to enter into the Agreements so that Carter Brothers and AT&T could avoid and evade federal and state labor laws, wage and hour laws, and numerous other state and federal laws, taxes and requirements. According to Plaintiffs, Carter Brothers and AT&T knew that their contract failed to provide sufficient funds to comply with such requirements. As an inducement to sign these agreements, Plaintiffs claim that Defendants fraudulently promised Class Members they would be converted to W-2 employees after a short introductory period of employment, which did not occur. Moreover, according to Plaintiffs, the Agreements contained illegal, unconscionable, void and voidable terms.

---

[1] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's First Amended Complaint. Compl., March 10, 2014, ECF No. 8.

Those terms included provisions relating to non-competition, indemnification, dispute resolution and governing law.  Plaintiffs seek to rescind the Agreements and request that the Court find the Agreements unconscionable and therefore invalid and unenforceable in their entirety.

Although Plaintiffs signed Agreements purporting to state that they were independent contractors, Plaintiffs claim they were in fact employees of both Carter Brothers and AT&T.  In support of that proposition, Plaintiffs point to a number of factors indicating that they were employees rather than independent contractors.  Class Members were given their work schedule, for example, by both Carter Brothers and AT&T, and were expected to abide by the scheduling dictated by those two entities. Additionally, Class Members were required to drive vehicles owned and provided by AT&T that displayed AT&T's logo and branding.  Class Members were not allowed to use those vehicles for any personal reason.  Class Members had no ownership or investment in the work they did for Carter Brothers and for AT&T, and had to provide their own tools and supplies, even though Carter Brothers and AT&T promised that such items would be provided.  Class Members were also required to wear uniforms bearing AT&T logos and were expressly forbidden from engaging in any outside work with competing employers during and after the term of the Agreements.  Class Members were required to participate in a two-week initial training session provided by Carter Brothers and AT&T, and also had to participate in on-going training sessions which served as direction for the means and manner for carrying out the work they were required to perform.  Additionally, Class Members' work was regularly overseen, supervised and directed by Carter Brothers and by AT&T.

AT&T moves to dismiss the present action pursuant to Federal Rule of Civil Procedure 12(b)(6),[2] for failure to allege sufficient facts to support  Plaintiffs' claims against AT&T.  Specifically, AT&T argues that Plaintiffs' allegations do not allow a

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

reasonable inference that AT&T was Plaintiffs' employer, and that AT&T cannot therefore be liable for alleged violations of the state and federal labor statutes on that basis. See ECF No. 32.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

4

the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## ANALYSIS

### A.    AT&T's Status as an Employer

#### 1.    Preliminary Considerations

As an initial matter, Defendant AT&T argues that Plaintiffs' use of the term "Defendant Employers" renders it impossible to ascertain which allegations in the FAC are being made against AT&T, Carter Brothers, or both.  ECF No. 32 at 11.  In Plaintiffs' Opposition, they clarify and explain that their use of that term "is an efficient manner of describing actions undertaken by both AT&T and Carter Brothers."  ECF No. 37 at 8.  The joint employer doctrine recognizes that even where business entities are separate, if they share control of the terms or conditions of an individual's employment, both companies can qualify as employers.  Real v. Driscoll Strawberry Assocs., Inc, 603 F.2d 748, 769-70 (9th Cir. 1979).  In determining employer status for pleading purposes, the Court will view allegations against "Defendant Employers" in the FAC as implicating actions taken by both Defendants AT&T and Carter Brothers.

Defendant AT&T argues in its motion to dismiss that it is neither an employer nor a joint employer of Plaintiffs and therefore cannot be liable for alleged violations of either state law or the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA").  ECF No. 32 at 17.  Specifically, Defendant AT&T argues that Plaintiffs have failed to provide any facts that would establish that AT&T was Plaintiffs' employer.  Id. at

1  19. The Court disagrees with AT&T's contentions and finds Plaintiffs have alleged
sufficient facts to support their claim that AT&T was a joint employer for pleading
purposes.

Joint employment exists where an employee works for more than one employer at the same time. For example, under the FLSA, a joint employment relationship will generally be considered to exist when "(1) the employers are not 'completely disassociated' with respect to the employment of the individuals; and (2) where one employer is controlled by another or the employers are under common control." Chao v. A-One Med. Servs, Inc., 346 F.3d 908, 918 (9th Cir. 2003). Similarly, under California law, where an employer sends an employee to work for another employer, and where both retain the right to control the employee's activities, dual employment exists. Cnty. of Los Angeles v. Workers' Comp. Appeals Bd., 30 Cal. 3d 391, 405 (1981).

### 2. Factors Considered Under California Law

In determining whether an employment relationship exists, the most important consideration "is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341, 350 (1989), quoting Tieberg v. Unemployment Ins. App. Bd., 2 Cal.3d 943, 946 (1970). There are also several additional secondary factors that may be considered when determining the existence of an employment relationship such as: "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." Borello,

48 Cal. 3d at 351.  Recently, the California Supreme Court held that the Borello court's "all necessary control" test is applicable in determining the employment status in a suit for wage and hour protections like the present action.  Ayala v. Antelope Valley Newspapers, Inc., 59 Cal. 4th 522, 531 (2014).

### a. Right to Control

When evaluating the employer's right to control, what matters is how much control the hiring entity retains the right to exercise, not how much control that entity actually exercises.  Id. at 533; see Malloy v. Fong, 37 Cal. 2d 356, 370 (1951) ("It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent.").  First, AT&T can and did control the Class Members' appearance by requiring them to wear AT&T uniforms.  See Ruiz v. Affinity Logistics Corp., 754 F.3d 1093, 1101 (9th Cir. 2014) (finding right to control under California law where a company controlled "every exquisite detail" of the drivers' appearance).  Second, Plaintiffs have alleged in their FAC that Defendants Carter Brothers and AT&T gave Class Members their work schedule and dispatched them to work sites.  ECF No. 8 at 14.  Moreover, Class Members had "no control" over setting appointments or their work schedules.  Id.  Third, Class Members' work was "regularly overseen, supervised, and directed" by Defendants Carter Brothers and AT&T.  Id. at 15.  Fourth, Plaintiffs also allege that Class Members could be involuntarily terminated for any reason.  Id. at 16; see also ECF No 1-1 at 5 ("Either Party may terminate this Agreement with or without cause . . . . .").  Although this provision applies explicitly only to Carter Brothers, since Plaintiffs assert that Defendant AT&T also possessed considerable control and supervision over the terms and conditions of Plaintiffs' work, AT&T also presumably had the power, at least indirectly, to terminate Class Members.  The California Supreme Court has noted that "[p]erhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause . . . ."  Ayala, 59 Cal. 4th at 531; see Malloy, 37 Cal. 2d at 370 (Because "[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.").  Fifth, AT&T also controlled the manner and means

of Class Members' work by requiring Class Members to participate in training, and AT&T regularly supervised and oversaw their work. ECF No. 8 at 15.

Given the above allegations, it is clear that Defendant AT&T had control over Class Members' appearance, working hours and working conditions. These facts, as set forth in Plaintiffs' FAC, support the conclusion that, at least for pleadings purposes, Defendant AT&T exercised a significant right to control the activities of Class Members.

### b. Secondary Factors

In light of the substantial facts alleged by Plaintiffs that evidence AT&T's right to control the manner in which Class Members performed their work, none of the remaining secondary factors sufficiently weigh in AT&T's favor for purposes of concluding, as a matter of law on the pleadings, that Class Members were independent contractors vis-à-vis AT&T. Notably, the only secondary factor supporting the existence of an independent contractor relationship is the fact that Class Members signed the independent contractor agreements and obtained their own licenses. ECF No. 8 at 13-14. According to AT&T, this lends credence to the conclusion that both AT&T and Class Members believed they were creating an independent contractor relationship. However, even this factor is insignificant because Plaintiffs claim Defendants required them to obtain the licenses and were induced into signing the Agreements by Defendants' promises that Plaintiffs would be converted to W-2 employees after a short introductory period of employment. Id. Additionally, while Class Members apparently were required to buy some of their own tools, and while that arrangement can point towards an independent contractor status, the FAC also alleges that Class Members were in fact told that Defendants would furnish tools, and that Class Members only purchased tools when they were not supplied. Id. at 15. In any event, California courts have found on numerous occasions that an employee-employer relationship can still exist where employees invested in tools. See Borello, 48 Cal. 3d 341, 357.

Several of the secondary factors weigh in favor of finding an employee-employer relationship. The fact that Class Members had little or no previous specific or

specialized training, and had no ownership or investment in their own business, favors a finding of employment. See ECF No. 8 at 15. Class Members were also required to drive vehicles owned and operated by AT&T and displaying AT&T branding and logos. Id. at 14. Class members were forbidden from engaging in any outside work in competition with Defendants both during and after the relationship ended. Id. at 15. Additionally, Class Members were required to participate in on-going training sessions in order to carry out their work in a specific manner proscribed by Carter Brothers and AT&T. Id.

In sum, Plaintiffs have alleged sufficient facts to demonstrate they were employees under California's all necessary control test, and that AT&T had a broad right to control the manner in which Class Members performed their work.

### 3. AT&T's Status as an Employer Under Federal Law

The definition of employee set forth in the FLSA , has been called the "broadest definition that has ever been included in any one act." United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945). In determining whether or not an employment relationship exists under federal law, the Ninth Circuit applies an "economic reality" test. Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir.1983); Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754-55 (9th Cir. 1979) ("Economic realities, not contractual labels determines employment status for the remedial purposes of the FLSA."). All factors that are "relevant to [the] particular situation" should be considered when evaluating the "economic reality" of an alleged employment relationship. Bonnette, 704 F.2d at 1470. Courts typically look to the following non-exhaustive list of factors when determining whether an employee/employer relationship exists: (a) the degree of the alleged employer's right to control the manner in which the work is to be performed; (b) the alleged employee's opportunity for profit or loss depending on his managerial skill; (c) the alleged employee's investment in equipment required for his work, or his employment of helpers; (d) whether the service requires a special skill; (e)

the degree of permanence of the working relationship; and (f) whether the service is an integral part of the alleged employer's business. Real, 603 F.2d 748, 754.

The economic reality test is similar to California's "all necessary control" test and also leads the Court to conclude that, for pleading purposes, Plaintiffs have alleged sufficient facts to indicate that Class Members were employees of Defendant AT&T. The following facts indicate AT&T controlled the manner in which Class Members performed their work. Class Members were given their work schedule by Carter Brothers and AT&T who dispatched them to work sites. ECF No. 8 at 14. Class Members were required to drive vehicles owned and provided by AT&T, and not allowed to make personal stops or carry passengers while driving the AT&T vehicles. Id. at 15. Class Members' work was regularly overseen and supervised by Carter Brothers and AT&T. Id. These allegations support the conclusion that AT&T possessed considerable control over the manner in which Class Members performed their work.

Class Members provided support services for an important part of AT&T's business. Class Members installed AT&T's Digital Life home security system, which was integral to AT&T's provision of services to Digital Life customers. ECF No. 8 at 13. Additionally, Class Members had no ownership or investment in their own business, and supplied only some of their own tools. Id. at 14-15. Class Members had little to no previous specific training in security system installation or services. Id. at 15. In addition, similar to the farmworkers in Torres-Lopez v. May, 111 F.3d 633, 644 (9th Cir. 1997), Class Members had no opportunity for profit or loss depending upon their managerial skill, because they were paid an hourly wage. ECF No. 8 at 15.

The Court finds that Plaintiffs have pled sufficient facts at this stage to support their allegation that Class Members and Defendant AT&T were engaged in an employee-employer relationship under both California and federal law.

///

///

### B. California Labor Code § 2810

AT&T also argues that Plaintiffs' allegations do not allow a reasonable inference that AT&T violated California Labor Code § 2810, as alleged in Plaintiff's Fifth Cause of Action. ECF No. 32 at 21. Specifically, AT&T argues that the FAC provides no factual allegations that demonstrate (1) that the installation of Digital Life security systems involved any "construction labor…or services" as required by §2810; and (2) that AT&T knew or should have known the sums it paid to Carter Brothers pursuant to their Agreement were insufficient to comply with all labor laws, if the contract was indeed under-funded. Id. at 22.

Both cases cited by AT&T in support of their argument are distinguishable from the present case, and therefore lack precedential value. In Hawkins v. TACA Int'l Airlines, S.A., 223 Cal. App. 4th 466, 472 (2014), reh'g denied (Feb. 18, 2014), review denied (May 14, 2014), the plaintiff filed a third amended complaint after the action had been pending for twenty months, and for the first time alleged a cause of action for violation of Section 2810. Plaintiff had never attempted to ascertain through discovery whether or not a contract in fact existed. Id. at 476. Moreover, the court found that the allegations in the complaint were inconsistent with a § 2810 claim because the plaintiffs' had alleged in their complaint that the defendant had the ability to pay all wages earned by the plaintiff classes, thus contradicting their assertions that the contracts were underfunded. Id. at 480. Similarly in Rojas v. Brinderson Constructors Inc., 567 F. Supp. 2d 1205, 1209-10 (C.D. Cal. 2008), the court found the plaintiffs' § 2810 allegations to be purely speculative, unreasonable and a product of guesswork.

Plaintiffs here commenced their action in February 2014, alleging a § 2810 claim. The First Amended Complaint was filed in March 2014. In the original complaint, Plaintiffs attached the independent contractor agreement, which was required by both Carter Brothers and AT&T, as evidence that AT&T knew the technicians were misclassified as independent contractors rather than employees, and did not receive the benefits owed to them under state and federal law. See ECF No 1-1. Taking into

account the totality of the circumstances alleged in the FAC, Plaintiffs have pled enough factual allegations to support a § 2810 claim, namely that Carter Brothers and AT&T entered into a contract or agreement for electrical contracting services and knew or had reason to know the agreement included insufficient funds to allow compliance with all applicable local, state and federal laws. ECF No. 8 at 20. Defendant AT&T's argument that the installation of AT&T Digital Life security systems cannot constitute "construction labor or services," for the purpose of a Section 2810 claim is not well taken. ECF No. 32 at 22. Because Plaintiffs have alleged that the requisite "construction labor" is indeed entailed by the installation services being performed, and since the Court must accept that contention as true for purposes of this motion, AT&T's argument to the contrary does not warrant dismissal at this time. See ECF No. 37 at 18; ECF No. 32 at 22.

### C. Conversion

AT&T argues it owed no legal duty to Plaintiffs as an alleged employer, and that therefore Plaintiffs' conversion claim against AT&T, as set forth in the Eighth Cause of Action, should be dismissed. ECF No. 32 at 23. Because Plaintiffs have provided sufficient factual allegations to support their argument that AT&T was an employer, dismissal of this claim is improper.

### D. California's Unfair Competition Law

AT&T also argues that because Plaintiffs have not sufficiently alleged that AT&T was their employer, AT&T cannot be liable for violations of California's Unfair Competition Law, California Business and Professions Code § 17200, et seq., as Plaintiffs assert in their Ninth Cause of Action. ECF No. 32 at 24. Because Plaintiffs have provided sufficient factual allegations to support their argument that AT&T was an employer, dismissal of this claim is also improper.

///
///
///
///

**CONCLUSION**

For all the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 32, is DENIED.

IT IS SO ORDERED.

Dated:  October 29, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT