1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                               EASTERN DISTRICT OF CALIFORNIA

10

11   RAMSES GUTIERREZ, et al.,                        No.  2:14-cv-00351-MCE-CKD
     individually and on behalf of all others
12   similarly situated,

13                  Plaintiffs,                        **MEMORANDUM AND ORDER**

14        v.

15   CARTER BROTHERS SECURITY
     SERVICES, LLC, AT&T DIGITAL LIFE,
16   INC., PACIFIC BELL TELEPHONE
     COMPANY DBA AT&T DATACOMM,
17   INC., AT&T CORP. and DOES 1
     through 10, inclusive,
18
                    Defendants.
19

20        On March 10, 2014, Plaintiffs filed the instant class action on behalf of themselves

21   and other putative class members (collectively "Plaintiffs or "Class Members") against

22   Carter Brothers Security Services, LLC ("Carter Brothers"), AT&T Digital Life, Inc.

23   ("AT&T"), Pacific Bell Telephone Company dba AT&T Datacomm, Inc. ("PacBell"), AT&T

24   Corp., and Does 1 through 10 inclusive ("Doe Defendants").  See ECF No. 8.  Plaintiffs

25   are seeking damages, restitution, civil penalties, and injunctive relief as a result of

26   Defendants' alleged violations of both state and federal labor laws.  Plaintiffs further

27   allege causes of action for conversion and violations of California's Unfair Competition

28   Law.  Id.  Presently before the court are two motions brought by Defendant Carter

                                              1

1    Brothers.  The first seeks an order compelling arbitration and dismissing, or alternatively

2    staying the action, and the second seeks to dismiss the complaint or, in the alternative,

3    to transfer the proceedings to Georgia.  See ECF Nos. 33, 34.  For the following

4    reasons, both motions are DENIED.[1]

5                                        **BACKGROUND[2]**

6

7           In 2012, Carter Brothers entered into a contract with AT&T that called for Carter

8    Brothers to provide technicians for the installation of AT&T Digital Life security systems

9    in customer homes and businesses.  Carter Decl., ¶ 2.  Under the terms of that contract,

10   Carter Brothers pledged to hire, train, and supply labor and construction related

11   installation and monitoring technicians to AT&T in California and various other states.

12   Prior to commencing work, Carter Brothers required Plaintiffs and Class Members to

13   sign an Independent Contractor Agreement ("Agreement"), which Plaintiffs allege

14   misclassified them as independent contractors rather than employees.  Plaintiffs claim

15   that Carter Brothers entered into these Agreements knowing the contract between Carter

16   Brothers and AT&T did not include sufficient funds to comply with all applicable local,

17   state, and federal laws or regulations governing the labor or services to be provided.

18          The thrust of Plaintiffs' argument is that Plaintiffs were required to enter into the

19   Agreements so that Carter Brothers and AT&T could avoid and evade federal and state

20   labor laws, wage and hour laws, and other laws, taxes, and requirements.  According to

21   Plaintiffs, Carter Brothers and AT&T knew that their contract failed to provide sufficient

22   funds to comply with such requirements.  As an inducement for Plaintiffs to sign the

23   Agreements, Plaintiffs claim that Defendants fraudulently promised Class Members they

24   would be converted to W-2 employees after a short introductory period of employment,

25   which never happened.  The Agreements, Plaintiffs claim, contained illegal,

26          [1] Because oral argument would not be of material assistance, the Court ordered this matter
27   submitted on the briefs.  E.D. Cal. Local R. 230(g).

28          [2] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Complaint. Compl.,
     March 10, 2014, ECF No. 8.

1   unconscionable, void and voidable terms.  Those terms included provisions relating to

2   non-competition, indemnification, dispute resolution, and governing law.  Plaintiffs seek

3   to rescind the Agreements, and request that the Court find the Agreements

4   unconscionable and therefore invalid and unenforceable in their entirety.

5         Although Plaintiffs signed Agreements purporting to state they were independent

6   contractors, Plaintiffs claim they were in fact employees of both Carter Brothers and

7   AT&T.  In support of that proposition, Plaintiffs aver that Class Members were given their

8   work schedule, for example, by both Carter Brothers and AT&T, and were expected to

9   abide by the scheduling dictated by those two entities.  Additionally, Class Members

10  were required to drive vehicles owned and provided by AT&T, that displayed AT&T's

11  logo and branding.  Class Members were not allowed to use those vehicles for any

12  personal reason.  Class Members had no ownership or investment in the work they did

13  for Carter Brothers and for AT&T, and had to provide their own tools and supplies, even

14  though Carter Brothers and AT&T promised those items would be provided.  Class

15  Members were also required to wear uniforms bearing AT&T logos and were expressly

16  forbidden from engaging in any outside work with competing employers during and after

17  the term of the Agreements.  Class Members were required to participate in a two-week

18  initial training session provided by Carter Brothers and AT&T, and to also participate in

19  on-going training sessions.  Additionally, Class Members' work was regularly overseen,

20  supervised, and directed by Carter Brothers and by AT&T.

21        In Carter Brothers' first motion, the company seeks to compel arbitration under

22  the terms of the Agreement and to dismiss the present action by virtue of the

23  Agreement's alternative dispute resolution provisions.  See ECF No. 34.  In Carter

24  Brothers' second motion, it asks the Court to transfer this action to Georgia under

25  Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §1406(a), pursuant to the forum

26  selection clause contained in the Agreement, and to accordingly dismiss the action

27  pending in this District.  Alternatively, Carter Brothers requests that these proceedings

28  be stayed pending completion of arbitration proceedings.  See ECF No. 33.

As set forth below Defendant's motions to compel arbitration and to dismiss or stay the action based upon the arbitration provision are denied.  Because the Court concludes the Agreements at issue are unconscionable and therefore unenforceable, Defendant Carter Brothers' Motion to Compel Arbitration based on the Agreements must necessarily fail.  Additionally, the fact that the Agreements are unenforceable means that Carter Brothers' second motion, to dismiss or transfer venue of the action based on the Agreements' forum selection clause, also fails.

**ANALYSIS**

The Federal Arbitration Act ("FAA") provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA allows a party to seek a court order compelling arbitration where another party refuses to arbitrate.  9 U.S.C. § 4.  Valid arbitration agreements must be "rigorously enforced."  Perry v. Thomas, 482 U.S. 483, 490 (1987) (citation omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in the original).

Generally, in deciding whether a dispute is subject to the arbitration agreement, a court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130.  Accordingly, the Court's role "is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the

1  claim and any defenses to the arbitrator."  Republic of Nicaragua v. Standard Fruit Co.,

2  937 F.2d 469, 479 (9th Cir. 1991).

3       In determining the existence of an agreement to arbitrate, the district court looks

4  to "general state-law principles of contract interpretation, while giving due regard to the

5  federal policy in favor of arbitration."  Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046,

6  1049 (9th Cir. 1996).

7       "Although 'courts may not invalidate arbitration agreements under state law

8  applicable only to arbitration provisions,' general contract defenses such as fraud,

9  duress, or unconscionability, grounded in state contact law, may operate to invalidate

10  arbitration agreements."  Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir.

11  2002) (quoting Doctor's Ass'n., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).  However,

12  courts cannot apply even generally applicable defenses to contract enforceability, such

13  as duress and unconscionability, in a way that disfavors and undermines arbitration.

14  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1747 (2011).  Finally, "as a matter of

15  federal law, any doubts concerning the scope of arbitrable issues should be resolved in

16  favor of arbitration, whether the problem at hand is a construction of the contract

17  language or an allegation of waiver, delay, or like defense to arbitrability."  Moses H.

18  Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).  "An order to

19  arbitrate . . . . should not be denied unless it may be said with positive assurance that

20  the arbitration clause is not susceptible of an interpretation that covers the asserted

21  dispute."  United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83

22  (1960).

23      **A.  Choice of Law**

24       As a threshold matter, when an agreement contains a choice of law provision, the

25  parties' choice of law applies "unless the analytical approach articulated in § 187(2) of

26  the Restatement (Second) of Conflict of Laws ('§ 187(2)") dictates a different result."

27  Hoffman v. Citibank (S. Dakota), N.A., 546 F.3d 1078, 1082 (9th Cir. 2008).  First, it must

28  be determined whether the chosen state, Georgia, "has a substantial relationship to the

1    parties or their transaction … or whether there is any other reasonable basis for the

2    parties' choice of law." Id.  Carter Brothers' principal place of business is located in

3    Atlanta, Georgia, and therefore Georgia has a substantial relationship to the parties.

4    ECF No. 8 at 4; see Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1323 (9th Cir. 2012).

5    The next step in the inquiry is whether the "chosen state's law is contrary to a

6    fundamental policy of California." Hoffman, 546 F.3d at 1082.  If the answer to that

7    question is in the affirmative, then "the court must determine whether California has a

8    materially greater interest than the chosen state in the determination of the particular

9    issue." Id.

10          Under Georgia law, Plaintiffs are presumptively independent contractors. Ruiz,

11   667 F.3d at 1324.  Under California law, on the other hand, courts must consider

12   legislation designed to protect and aid employees when determining the employee-

13   independent contractor issue. Id.  Applying Georgia law would therefore contravene

14   fundamental California public policy "in favor of ensuring worker protections." Id.

15   California also has a materially greater interest than Georgia in determining this case in

16   any event.  Plaintiffs completed all work in California, were domiciled in California, and

17   signed the agreements in California, while the only connection to Georgia is Carter

18   Brothers' principal place of business.  ECF No. 38 at 7; ECF No. 38-2 at 2; see Ruiz,

19   667 F.3d at 1324.  Given this materially greater interest, California law should apply in

20   adjudicating this matter.

21          **B.    Unconscionability**

22          As indicated above, Defendant Carter Brothers moves to compel arbitration of the

23   claims asserted against them in the Complaint pursuant to the terms of its Agreement

24   with Plaintiffs, and urges the Court to dismiss or stay the action, pending arbitration.  See

25   ECF No. 34 at 8, 12.  According to Carter Brothers, the arbitration provision is valid and

26   enforceable because "[p]laintiffs signed the Agreements under circumstances free of

27   fraud, duress, or other untoward circumstances."  ECF No. 34 at 9.

28   ///

6

1    In evaluating the validity of arbitration agreements, federal courts "should apply

2    ordinary state-law principles that govern the formation of contracts." First Options of

3    Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, (1995) (citations omitted).  In determining

4    whether a contract is unconscionable, the court must first determine whether or not the

5    agreement at issue is one of adhesion.  Armendariz v. Found. Health Psychcare Servs.,

6    Inc., 24 Cal.4th 83, 113 (2000) (citing Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 817-

7    819 (1981)).  Once the contract is found to be adhesive, the court must then assess

8    whether the contract is unduly oppressive or unconscionable.  Id.  In order to find a

9    contract unenforceable, the unconscionability analysis requires that the court find both a

10   procedural and substantive element are present.  A & M Produce Co. v. FMC Corp.,

11   135 Cal. App. 3d 473, 486 (1982).  The procedural element focuses on "surprise" and

12   "oppression," while cases have found the substantive element looks to whether there are

13   "one-sided" or "overly harsh" results.  Id. at 486-487.  These two elements however, do

14   not need to be present in the same degree. A sliding scale approach is invoked, where a

15   greater showing of one element requires less of a showing of the other.  Armendariz, 24

16   Cal. 4th at 114.

17   As an initial matter, the Supreme Court has held that "generally applicable

18   contract defenses, such as fraud, duress, or unconscionability, may be applied to

19   invalidate arbitration agreements without contravening § 2 [of the FAA]."  Doctor's

20   Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996).  Contrary to Defendants' position,

21   the validity of an arbitration provision is subject to "initial court determination."  Nitro-Lift

22   Technologies, L.L.C. v. Howard, 133 S. Ct. 500, 503 (2012).  If the court finds the

23   arbitration provision is valid, only then is the validity of the remainder of the contract for

24   the arbitrator to decide.  Id.

### 1.    Adhesion Contracts

26   The Ninth Circuit describes a contract of adhesion as a "standard-form contract,

27   drafted by the party with superior bargaining power, which relegates to the other party

28   the option of either adhering to its terms without modification or rejecting the contract

1   entirely." <u>Circuit City Stores</u>, 279 F.3d 889, 893 (citing <u>Stirlen v. Supercuts, Inc.</u>,

2   51 Cal. App. 4th 1519, 1533 (1997)).  In this case, the Agreement was a standardized

3   contract, drafted by Carter Brothers.  Because Plaintiffs' only option was to either accept

4   or reject the Agreements, with no opportunity to negotiate their terms, Carter Brothers

5   clearly had superior bargaining strength and the Agreements must be considered

6   contracts of adhesion.  <u>See</u> <u>Graham</u>, 28 Cal. 3d 807, 817  (a contract of adhesion is

7   signified by "a standardized contract, which, imposed and drafted by the party of superior

8   bargaining strength, relegates to the subscribing party only the opportunity to adhere to

9   the contract or reject it") (citing <u>Neal v. State Farm Ins. Cos.</u>, 188 Cal.App.2d 690, 694

10  (1961)).  That determination is not the end of the Court's inquiry, however, since in order

11  to be found unenforceable the Court must look to whether the Agreement is both

12  procedurally and substantively unconscionable.  That inquiry follows.

13                    **2.      Procedural Unconscionability**

14          Procedural unconscionability focuses on the manner in which the contract was

15  negotiated by the parties, and specifically focuses on factors of oppression and surprise.

16  <u>Kinney v. United HealthCare Servs., Inc.</u>, 70 Cal. App. 4th 1322, 1329 (1999) (citing

17  <u>A & M Produce Co.</u>, 135 Cal. App. 3d at 486) (explaining oppression arises from an

18  inequality of bargaining power devoid of any real negotiations, and surprise relates to

19  whether or not the terms of the contract are hidden by using excess text in the contract)

20  (citations omitted).  Plaintiffs' declarations clearly indicate they were required to sign the

21  Agreements as a condition of employment, and would have had to obtain employment

22  elsewhere if they chose not to do so.  <u>See</u> Decl. of Sapasap, ECF No. 38-1 at 20 (stating

23  "I knew if I did not sign the agreement I could not work for Carter Brothers and AT&T"),

24  Decl. of Jacob ECF No. 38-1 at 25 ("I thought I had to sign the Agreement to get a job"),

25  Decl. of Osorio, ECF No. 38-1 at 5 ("I was required to sign an Independent Contractor

26  Agreement as a condition of employment").  Furthermore, the Ninth Circuit has held that

27  "[a] finding of a contract of adhesion is essentially a finding of procedural

28  ///

1   unconscionability."  Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853

2   (2001).  Consequently, the procedural element of the unconscionability analysis is met.

3                      **3.      Substantive Unconscionability**

4          The substantive element of unconscionability hinges on the "terms of the

5   agreement and whether those terms are so one-sided as to shock the conscience."

6   Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003) (citing Kinney,

7   70 Cal. App. 4th 1322, 1330). In this case, numerous substantive terms of the

8   Agreement are one-sided; in particular, the provisions concerning arbitration,

9   non-competition, and governing law.  See ECF No. 38-2 at 2-10.

10          First and foremost, the dispute resolution and choice of law provisions are one

11  sided.  ECF No. 38-2 at 6-10 (requiring Plaintiffs to travel to Atlanta, Georgia, pay for

12  one-half of the arbitration costs and fees, and consent to jurisdiction in a venue that has

13  no relation to where the work was performed).  The arbitration provision does not provide

14  notification to the Plaintiffs that by agreeing to binding arbitration they forfeit substantial

15  rights such as potentially waiving their right to class arbitration.  ECF No. 38-2 at 7.

16  Also, the burden placed on Plaintiffs to pay for travel and lodging expenses, along with

17  mediation and arbitration fees and costs, are likely much larger than any of the Plaintiffs'

18  individual wage claims.  Decl. of Rose, ECF No. 38-4 at 1-2.

19           The financially onerous conditions set forth in the Agreements are further

20  amplified in the event Plaintiffs do not ultimately prevail.  Pursuant to the arbitration

21  provision, Plaintiffs may be required to pay "one-half of the costs of the arbitration

22  against the party who does not prevail."  ECF No. 38-2 at 7.  In addition, any party who

23  seeks to enforce the arbitration provision is entitled to all costs, fees, and expenses,

24  including attorneys' fees, to be paid "by the party against whom enforcement is ordered."

25  Id.

26          Under these circumstances, the alternative dispute resolution provision of the

27  Agreements fail to provide an accessible forum for Plaintiffs to vindicate their statutory

28  rights.  See, Shankle v. B-G Maint. Mgmt. of Colorado, Inc., 163 F.3d 1230, 1235 (10th

1  Cir. 1999) (Arbitration provision was unenforceable where "it prohibited use of the judicial

2  forum, where a litigant is not required to pay for a judge's services, and the prohibitive

3  cost substantially limited use of the arbitral forum," concluding the costs associated with

4  arbitration failed to provide an accessible forum where Plaintiff could vindicate his

5  statutory rights, rendering the Agreement unenforceable.).

6      Similarly one-sided is the non-competition provision, which restrains Plaintiffs

7  from competing in the same market for one year after expiration of their "Term," which

8  was limited to one year under the Agreement.  ECF No. 38-2 at 2-4.  Not only is this

9  provision overly-harsh and one-sided, it is also contrary to California Law.  See Cal. Bus.

10  & Prof. Code § 16600 (every contract which restrains one from engaging in a lawful

11  profession is to that extent void).  Assuming Plaintiffs can prove they were employees of

12  Carter Brothers, the indemnification provision in the Agreement is also contrary to

13  California law and unenforceable.  See ECF No. 38-2 at 6, Cal. Lab. Code §§ 2802,

14  2804 (requiring an employer to indemnify employees for necessary expenditures or

15  losses, and an agreement to waive this benefit is void).

16      Because these one-sided provisions favor Defendant Carter Brothers, under

17  California law these terms are substantively unconscionable.

18      **C.    Illegality**

19      In addition to finding the above-mentioned provisions unconscionable, under

20  California law, if a contract's "central purpose" is "tainted with illegality," then the contract

21  as a whole is unenforceable.  Armendariz, 24 Cal. 4th 83, 124.  The California Supreme

22  Court explained that if a court is unable to distinguish between the lawful and unlawful

23  parts of the contract, the "illegality taints the entire contract, and the entire transaction is

24  illegal and unenforceable."  Keene v. Harling, 61 Cal. 2d 318, 321 (1964).  The Court

25  agrees with Plaintiffs' characterization of the Agreements as an apparent attempt by

26  Carter Brothers to avoid paying employment taxes and other benefits that would, in turn,

27  give it a competitive edge over employers who properly paid applicable taxes and

28  benefits.  In that regard, then, the Agreements have an unlawful purpose.  See ECF No.

10

30 at 16.  Agreements whose object, "directly or indirectly, is to exempt [their] parties from violation of the law are against public policy and may not be enforced."  Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 382 (2014) (citing In re Marriage of Fell, 55 Cal. App. 4th 1058, 1065 (1997)).  Because the Agreements' underlying purpose appears to be illegal, the Court declines to enforce it.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Compel Arbitration, and to dismiss or stay this action based upon the Agreements' arbitration provisions (ECF No. 34) is DENIED.  Moreover, the fact that the Court has found the Agreements at issue to be unconscionable and therefore unenforceable means that Carter Brothers' second motion to dismiss the action, given the Agreement's arbitration provisions or to transfer venue based on the Agreement's forum selection clause, also fails.  That Motion, ECF No. 33, is consequently DENIED as moot.

IT IS SO ORDERED.

Dated:  October 29, 2014

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT